IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

QUISENBERRY PHARMACIES, INC.,           Civ. No. 6:21-cv-01278-AA

             Plaintiff,                      **OPINION & ORDER**

     v.

OHIO SECURITY INSURANCE COMPANY,

             Defendant.

_____

AIKEN, District Judge.

       This matter comes before the Court cross motions for summary judgment filed by Plaintiff Quisenberry Pharmacies, Inc., ECF No. 11, and by Defendant Ohio Security Insurance Company, ECF No. 12. The Court concludes that this matter is appropriate for resolution without oral argument. For the reasons set forth below, Plaintiff's Motion is GRANTED and Defendant's Motion is DENIED.

## LEGAL STANDARDS

       Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury

could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

Plaintiff Quisenberry Pharmacies, Inc. operates a pharmacy in a building located in Salem, Oregon. Bennett Decl. Ex. 1, at ¶ 3. ECF No. 13. Defendant Ohio Security Insurance Company issued an insurance policy No. BFS 55 37 75 13 (the "Policy") to Plaintiff for the period running from March 15, 2020 to March 15, 2021. *Id.* at ¶ 1.

### I.     The Loss Event

In December 2020, water and/or sewage began emanating from a floor drain the basement of Plaintiff's building and caused water damage to the property.

Bennett Decl. Ex. 1, at ¶ 5. Plaintiff notified Defendant of the loss on February 5, 2021. *Id.* at ¶ 7.

On February 15, 2021, Defendant sent a letter to Plaintiff indicating that it was investigating the loss and reserving its rights under the Policy. Bennett Decl. Ex. 2.

Plaintiff hired Spartan Environmental Services ("Spartan") to inspect the sewer system of the building. Bennett Decl. Ex. 1, at ¶ 8. On February 24, 2021, Spartan issued a report of its findings to Plaintiff. *Id.* at ¶ 9. In its inspection of the sewer pipes, Spartan found that the line was blocked by a large piece of concrete, surrounded by collapsed pipe. Bennett Decl. Ex. 1-B, at 2. Sparta "found that the pipe had fractured and broken apart due to the age of the pipe which appears to be a substantial period of time and expansion of the concrete within the pipe." *Id.* Spartan noted that the pipe "was in very bad shape, very brittle from old age." *Id.* To access the blockage, Spartan personnel had to drill down through a neighboring street to reach the point where the pipe had collapsed. *Id.* Spartan estimated a cost of $180,810 for the repair of the pipes. *Id.* at 1; Ex. 4, at 2.

On March 18, 2021, an independent adjustor performed and inspection of Plaintiff's property on behalf of Defendant. Bennett Decl. Ex. 1, at ¶ 10. The independent adjustor identified losses with a Replacement Cost Value ("RCV") of $11,091.08 and an Actual Cash Value ("ACV") of $9,436.33. Bennett Decl. Ex. 3, at 6. On March 30, 2021, Defendant paid Plaintiff $10,000, which was the limit of insurance provided by the Back-Up of Sewer or Drains Coverage Extension contained

in the Property Extension Endorsement to the Policy. Bennett Decl. Ex. 1, at ¶ 11. On May 11, 2021, Defendant denied further coverage under the Policy. Bennett Decl. Ex. 1, at ¶ 12; Ex. 5.

## II. The Policy

The Policy provides that it will provide payment "for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Bennett Decl. Ex. 1-A, at 12. "Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy." *Id.* at 29. The Policy provides that the insurer "will not pay for loss or damage caused directly or indirectly" by a specified list of exclusions. *Id.* "Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* Among these exclusions is the following, found at Paragraph B.1.g.(3) of the Policy:

> Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment.

Bennett Decl. Ex. 1-A, at 30 (the "Water Exclusion").

Under the "Additional Coverage Extensions" in Section F.2 of the Policy, coverage was extended:

> If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will pay the cost to tear our and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

Bennett Decl. Ex. 1-A, at 38.

Section G of the Policy provides additional definitions, including a definition for "Specified causes of loss," which defines "water damage" as follows:

> c. Water damage means:
>
> (1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and
>
> (2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.
>
> But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.
>
> To the extent that accidental discharge or leakage of water falls within the criteria set forth in c.(1) or c.(2) of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion, which precludes coverage for surface water or water under the surface of the ground.

Bennett Decl. Ex. 1-A, at 39.

The Property Extension Endorsement to the Policy altered the Water Exclusion as follows:

**F. Back-up Of Sewers Or Drains**

> Paragraph **B.1.g.(3) WATER** of the CAUSES OF LOSS – SPECIAL FORM is deleted and replaced with the following:
>
> (3) Except as provided under the Back-up Of Sewers Or Drains Additional Coverage Extension, water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;
>
> The following is added to Section F. Additional Coverage Extensions of the CAUSES OF LOSS SPECIAL FORM:
>
> **4. Back-up Of Sewers Or Drains**
>
> We cover direct physical loss or damage caused by water:
>
> a. Which backs up into a building or structure through sewers or drains which are directly connected to a sanitary sewer or septic system; or
>
> b. Which enters into and overflows from within a sump pump, sump pump well or other type of system designed to remove subsurface water which is drained from the foundation area.
>
> This coverage does not apply if the loss or damage is caused by your negligence.
>
> We will not pay for water or other materials that back up, overflow, or are discharged from a sewer, drain, sump, sump pump or related equipment when it is caused by any flood, whether the flood is caused by any act of nature or is otherwise caused.
>
> The most we will pay for loss or damage in any one occurrence under this Coverage Extension is $10,000.

Bennett Decl. Ex. 1-A, at 50-51 (the "Sewer Coverage Extension").

As previously noted, Defendant paid $10,000 to Plaintiff under the Sewer Coverage Extension for their loss caused by the backup of sewer water into the basement.

## DISCUSSION

In its motion, Plaintiff seeks a determination that (1) coverage exists under the Policy for damage caused by the overflow of the sewer drain and (2) that coverage exists to pay for the cost of tearing out and replacing parts of the property necessary to repair the damage caused by the overflow. Defendant also moves for summary judgment and seeks a determination that it owes no additional coverage to Plaintiff under the Policy. At its core, the dispute revolves around whether the Water Exclusion applies to bar coverage for Plaintiff's loss.

Under Oregon law, interpreting an insurance policy is a matter of law, with the primary objective being to determine the intent of the parties. *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469 (1992). Determining the parties' intent is a three-step process. First, the court examines the text of the policy to determine whether it is ambiguous—that is, susceptible to more than one reasonable interpretation. *Id.* at 469-70. If there is no ambiguity, the policy is interpreted and applied according to its plain meaning. *Id.* If the policy's text is ambiguous, the second step is to examine the disputed terms in the broader context of the policy as a whole. *Andres v. Am. Standard Ins. Co.*, 205 Or. App. 419, 424 (2006). "If—and only if—the ambiguity persists, we construe the policy against the drafter, in this case, defendant." *Id.* "In the context of insurance contracts, courts determine plain meaning from the perspective of a reasonable insured." *Veloz v. Foremost Ins. Co.*, 306 F. Supp.3d 1271, 1275 (D. Or. 2018).

"The insured bears the initial burden of proving that a loss is covered under an insurance policy, while the insurer bears the burden of proving that a loss is excluded from coverage." *Veloz*, 306 F. Supp.3d at 1275. "It is also the insured's burden to establish that a claim is within an exception to an exclusion." *Id.*

As noted, Defendant asserts that the Water Exclusion applies to bar coverage of Plaintiff's claim. If this were a case where water had simply backed up out of the drains as a result of an ordinary clog or similar event, the Court would agree with Defendant that coverage would be barred by the Water Exclusion. However, the evidence presented to the Court demonstrates that the backup and flooding in Plaintiff's basement was caused by the collapse and obstruction of an off-premises sewer line caused by the extreme old age of the pipe. This is precisely what is described in Section G.2.c.(2) of the Policy as a specified cause of loss. Section G.2.c. of the Policy goes on to say:

> To the extent that accidental discharge or leakage of water falls within the criteria set forth in c.(1) or c.(2) of this definition of "specified causes of loss," *such water is not subject to the provisions of the Water Exclusion*, which precludes coverage for surface water or water under the surface of the ground.

Bennett Decl. Ex. 1-A, at 39 (emphasis added).

By the plain terms of the Policy, therefore, a loss that "falls within the criteria set forth" in Section G.2.c.(2) "is not subject to the provisions of the Water Exclusion." This is bolstered by the earlier sentence in Section G, which provides that "water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion." Read together, these sentences make it clear that *only* water

damage that meets the criteria set forth in Sections G.2.c.(1) and G.2.c.(2) are excepted from the Water Exclusion. To the extent that there is any ambiguity between Section G.2.c and the Water Exclusion (and the Court finds none), it would be resolved in favor of Plaintiff.

Although the Court need not look beyond the four corners of the Policy to reach this conclusion, it is bolstered by a review of the "Important Notice to Policyholders: Changes in Coverage," which Defendant sent to Plaintiff to summarize changes in the Policy. Quisenberry Decl. Ex. 1.010-1.018. Among the noted changes, under the subheading "Broadenings of Coverage" is a heading for "Specified Causes of Loss—Water Damage" which reads:

> Coverage for water damage under the definition of "specified causes of loss" is expanded to include accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of certain off-premises systems due to wear and tear.

Quisenberry Decl. Ex. 1.011.[1]

As noted, this is beyond the four corners of the Policy itself, but it is consonant with the plain reading of Section G.2.c.(2) as an exception to the Water Exclusion.

Put simply, Plaintiff has established that its loss falls within an exception to the Water Exclusion. Because the damage is not subject to the provisions of the Water Exclusion, and because Defendant has not shown that any other exclusion would apply, the loss is covered by the Policy.

---

[1] The Court notes that, in addition to falling outside of the Policy itself, the Notice by its own terms does not provide coverage, nor does it replace any provisions of the Policy. Quisenberry Decl. Ex. 1.010. As such, the Court does not rely on the Notice in reaching its conclusion.

Page 9 –OPINION & ORDER

Plaintiff also asserts that coverage is also afforded under another section of the Policy, which governs losses caused by the discharge of pollutants. The Policy excludes coverage for loses caused by the

> Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

Bennett Decl. Ex. 1-A, at 33.

"Pollutants" are defined in the Policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Bennett Decl. Ex. 1-A, at 28. "Waste includes materials to be recycled, reconditioned or reclaimed." *Id*. The Court concludes that this definition of "pollutants," would include the sewage water that was discharged into Plaintiff's basement. The Court further concludes that Plaintiff is entitled to coverage for the loss caused by the discharge of pollutants, which resulted in a "specified cause of loss," which in this case is water damage as set forth in Section G.2.c of the Policy.

Finally, the parties dispute whether the Policy requires coverage of the cost of tearing out and replacing the damaged pipe under Section F, "Additional Coverage Extensions." Bennett Decl. Ex. 1-A, at 38. This section provides:

> If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

Bennett Decl. Ex. 1-A, at 38.

Defendant argues that Section F only applies if there is a covered cause of loss and asserts that, because Plaintiff's loss falls within the Water Exclusion, there is no covered cause of loss. However, as discussed above, the specific loss suffered by Plaintiff is not included in the Water Exclusion because it meets the criteria described in Section G.2.c.(2). Plaintiff has, therefore, suffered a covered loss and is entitled to coverage under Section F of the Policy.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment, ECF No. 11 is GRANTED. Defendant's Cross-Motion for Summary Judgment, ECF No. 12, is DENIED.

It is so ORDERED and DATED this   13th   day of January 2023.

          /s/Ann Aiken
          ANN AIKEN
          United States District Judge